No. 82-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

DEAN GRAHAM,

       Plaintiff and Appellant,

  -vs-

CLARKS FORK NATIONAL BANK,

       Defendant and Respondent.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Carbon, The Honorable
Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        Morrow, Sedivy, Olson & Eck; Thomas Olson,
Bozeman, Montana
Swandal, Douglass & Swandal; Kent R. Douglass,
Livingston, Montana

    For Respondent:

        Bridger Law Office; Joseph Mudd, Bridger,
Montana
Moulton, Bellingham, Longo & Mather, Billings,
Montana

Submitted on Briefs:  April 15, 1983

Decided:  May 19, 1983

Filed:  MAY 19 1983

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal comes from the District Court of the Thirteenth Judicial District in and for the County of Carbon. Plaintiff commenced this action seeking damages for conversion of cattle.

In 1978, Dean Graham purchased nineteen head of registered cattle. The cattle were pastured on land owned by his then son-in-law, Marvin Heyd. Heyd also owned cattle; secured by Clarks Fork National Bank. Heyd could not meet his obligations to the bank, consequently, the bank took possession of Heyd's cattle, and by mistake, also took Graham's cattle. Graham alleged that, during the time the bank had possession, his cattle lost weight. Graham also alleged that his cattle were improperly pastured with bulls owned by Heyd, and as a result he was forced to abandon a program of artificial insemination.

Graham brought suit against the bank alleging conversion, seeking damages in excess of $200,000. During the trial the court refused Graham's offered testimony concerning the value of a hypothetical purebred angus calf crop. Also, the court granted the bank a directed verdict on Graham's claim of future damages and exemplary damages. The jury returned an award of $53,475. The District Court set aside the jury award as excessive and granted a new trial limited to the issue of damages arising from the wrongful conversion.

Graham appealed to this Court. This Court held that (1) the granting of a new trial was proper, (2) on retrial, Graham should be allowed to offer evidence of future calf crop losses, and (3) the claim of exemplary damage should be submitted to the jury. Graham v. Clarks Fork National Bank (1981), ____ Mont. ____, 631 P.2d 718, 38 St.Rep. 1140. The case was retried and the jury awarded Graham $2,200 actual damages plus costs. Graham appeals again.

The appellant has raised two issues, both of which stem from evidence which was admitted concerning Marvin Heyd's character.

First, appellant argues that admission of the evidence was in clear violation of this Court's mandate in our first opinion; and second, by admitting the evidence the District Court ignored the law of conversion. The contested evidence appears in several places throughout the 874 page transcript. Appellant points to nineteen specific instances where evidence was allowed concerning Marvin Heyd's character; most of which focused on his lack of financial responsibility. Appellant claims that since Heyd was to pasture his cattle, and, since Heyd was his son-in-law, the character of Heyd was associated with himself. As a result, appellant claims he was denied a fair and impartial trial.

Appellant admits that there never was an objection to the admission of any of the contested evidence. Indeed, much of the evidence was illicited while appellant's trial counsel was questioning the various witnesses. Of the nineteen instances of alleged error, twelve were brought about by the appellant himself. Nonetheless, appellant claims that the issue is properly before this Court via the "plain error" doctrine discussed in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, where this Court held that absent objection at trial, this Court may consider issues relating to the fundamental rights of the parties.

The plain error doctrine is not applicable to this case. In Halldorson, we elaborated on the doctrine by stating:

> "appellate courts have a duty to determine whether the parties before them have been denied substantial justice by the trial court, and when that has occurred we can, within our sound discretion, consider whether the trial court has deprived a litigant of a fair and impartial trial, even though no objection was made to the conduct during the trial."
> Halldorson, 175 Mont. at 174, 573 P.2d at 172.

We have carefully reviewed the record and see no reason to upset the verdict and judgment. Appellant was not denied substantial justice. He received a fair trial, accordingly, we affirm.

_John Conway Harrison_
Justice

We concur:

_____
                Chief Justice

_____

_____
                Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent.

This Court should reverse the judgment in the District Court, and remand the cause for a new trial limited strictly to the issue of damages.

There have now been two district court trials of this cause. After the first trial, the District Court granted a new trial, limited strictly to the issue of damages. On appeal, we affirmed the grant of the new trial limited to the issue of damages, and specified that additional factors relating to damages should be considered in the next trial. When the next trial occurred, the issues were not limited to damages. It is on that basis that the plaintiff now appeals, and on which the plaintiff ought to be sustained.

When we affirmed the grant of a new trial limited to the issue of damages, that holding became the law of the case. When the District Court disregarded the law of the case, and expanded the second trial to include evidence of the character of a nonparty, it abandoned the law of the case, and the District Court should be checked in that abandonment.

In explaining the law of the case, this Court has held:

"The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in trial court and upon subsequent appeals; and this although upon its subsequent consideration the Supreme Court may be clearly of opinion that the former decision is erroneous * * * It is a final adjudication from the consequences of which this Court may not depart, nor the parties relieve themselves (citing cases)." Carlson v. Northern Pacific Railroad Company (1930), 86 Mont. 78, 281 P. 913, 914. See also Fiscus v. Beartooth Elec. Cooperative (1979), 180 Mont. 434, 591 P.2d 196.

- 5 -

This is a case where the bank seized Graham's cows for another person's debts in spite of the fact that Graham's cows carried brands which established their ownership and which brands were disregarded by the bank when the cows were seized. When Graham attempted to recover his cows, the bank refused to divulge their location and turned his cows into pasture with 6 unregistered bulls. Thus the bank destroyed the breeding program that Graham had established for his herd. By expanding the second District Court trial, as it did, the District Court allowed the bank to remove the "black hat" from its head, and put it on the head of a debtor, a factor that had no relationship to the damages sustained by Graham.

Contrary to what is contained in the majority opinion, the holding of this Court in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, commands that we return this cause for a proper trial limited to the issue of damages sustained by Graham. The verdict which the majority is affirming here is manifestly insufficient.

_____
John C. Sheehy
Justice