FILED

April 5 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0252

DA 15-0252

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 80

JULIA FENWICK,

        Plaintiff and Appellant,

   v.

STATE OF MONTANA, DEPARTMENT OF
MILITARY AFFAIRS, DISASTER AND
EMERGENCY SERVICES DIVISION,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark Cause No. BDV-2012-268
                    Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Palmer A. Hoovestal, Hoovestal Law Firm, PLLC; Helena, Montana

        For Appellees:

        Trevor L. Uffelman, Attorney at Law; Helena, Montana

        Curt Drake, Patricia H. Klanke, Drake Law Firm; Helena, Montana

Submitted on Briefs:  February 17, 2016

Decided:  April 5, 2016

Filed:

                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Julia Fenwick (Fenwick) appeals from an order entered by the First Judicial District Court, Lewis and Clark County, granting summary judgment to the State of Montana, Department of Military Affairs and Emergency Services Division (Department), on several of her claims related to the severance of her employment with the Department.

¶2 We address the following issues, and affirm:

1. *Did the District Court err by holding the Severance Agreement was lawful?*

2. *Did the District Court err by holding that Fenwick did not enter the Severance Agreement under duress, undue influence, menace, fraud, or mistake?*

3. *Did the District Court err by holding the undisputed facts establish the Department's consideration for the Severance Agreement did not fail?*

4. *Did the District Court err by dismissing Fenwick's constitutional claims?*

5. *As argued by the Department, did the District Court err by denying summary judgment to the Department on Fenwick's claims for Intentional Interference with a Business Relationship and Breach of the Covenant of Good Faith and Fair Dealing?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In April 2011, Fenwick and the Department executed a voluntary severance agreement (Severance Agreement) wherein the Department agreed to lay off Fenwick, as opposed to terminating her for cause, in exchange for Fenwick releasing any claims she had against the Department.

¶4 As consideration for Fenwick's release of claims, the Severance Agreement obligated the Department to do several things. First, the Department agreed to eliminate

2

Fenwick's position, the Office of Homeland Security Grants Manager, pursuant to the Reduction in Force Policy (RIF Policy) set forth in the Montana Operations Manual.[1] Second, the Department agreed to allow Fenwick to participate in the job registry for two years following the lay-off date. And third, the Department agreed to provide Fenwick with neutral employment recommendations. The Department also provided Fenwick other benefits, including three months' pay plus $3,500, healthcare, and access to training.

¶5 As consideration for the Department laying off Fenwick instead of discharging her, Fenwick was obligated to waive all claims known or unknown that she may have against the Department and waive all benefits under the RIF Policy that were not specifically mentioned by the Severance Agreement.

¶6 After execution of the Severance Agreement, for which both parties were represented by counsel, the Department eliminated the position of Office of Homeland Security Grants Manager. Seven months later, the Department created a new position, the Disaster and Emergency Services Grants Program Manager. Fenwick applied for this position through the job registry, but was not hired for the position.

¶7 Fenwick thereafter started an independent consulting business and contracted with Butte-Silver Bow County to provide grants administration services. The Department allegedly contacted Butte-Silver Bow County officials and stated that Fenwick should not be permitted to contact Department coordinators in the course of her work for the

---

[1] The Montana Operations Manual contains policies, procedures, and standards applicable to the internal operations of the Montana state government. http://mom.mt.gov/.

County. At no time did the Department receive a request for an employment recommendation from any person or organization.

¶8 Fenwick filed this action, alleging the Severance Agreement should be rescinded because (1) it was unlawful under a provision in the RIF Policy that barred the use of a reduction-in-force layoff in lieu of termination; (2) the Department's consideration failed because it had not actually eliminated her position; (3) the Department's consideration failed because it did not give her preferential treatment pursuant to the RIF Policy when considering her application for the Disaster and Emergency Services Grants Program Manager position; and (4) the Department's consideration failed because the Department's communications with Butte-Silver Bow County constituted negative employment recommendations. In addition, Fenwick alleged wrongful discharge, intentional interference with a business relationship, breach of the covenant of good faith and fair dealing, and constitutional tort claims. The District Court dismissed Fenwick's constitutional tort claims, holding the claims were not recognized as valid causes of action under Montana law or were otherwise not well pleaded.

¶9 The parties filed cross-motions on summary judgment. The District Court held as a matter of law that the Severance Agreement could not be rescinded because (1) the Severance Agreement was not unlawful because the RIF Policy was not law; (2) the Department's consideration did not fail because it had eliminated Fenwick's position; (3) the Department's consideration did not fail because the Severance Agreement expressly stated Fenwick would not be given preferential treatment when applying to jobs through the job registry; and (4) the Department's consideration did not fail because its

4

communications with Butte-Silver Bow County, while actionable, did not constitute an employment recommendation. The District Court further held that genuine issues of material fact precluded summary judgment on Fenwick's claims for intentional interference with a business relationship and the breach of the covenant of good faith and fair dealing, and that they would be tried.

¶10 Fenwick requested certification of the District Court's judgment and dismissal orders as final for purposes of appeal pursuant to M. R. Civ. P. 54(b). The District Court considered the factors set out in *Weinstein v. University of Montana*, 271 Mont. 435, 898 P.2d 101 (1995), and granted certification. This Court entered an order determining the certification order complied with the Montana Rules of Appellate Procedure and that the appeal may proceed.

## STANDARD OF REVIEW

¶11 The construction and interpretation of a contract is a question of law that is reviewed for correctness. *Schwend v. Schwend*, 1999 MT 194, ¶ 36, 295 Mont. 384, 983 P.2d 988.

¶12 An order on summary judgment is reviewed de novo, applying the same criteria as the district court. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186. Under M. R. Civ. P. 56(c), summary judgment is appropriate where there is a complete absence of genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Lorang*, ¶ 37. All reasonable inferences from the evidence are drawn in favor of the non-moving party. *Redies v. Attys. Liab. Prot. Soc'y*, 2007 MT 9, ¶ 26, 335 Mont. 233, 150 P.3d 930.

5

¶13    A district court's ruling on a motion to dismiss under M. R. Civ. P. 12(b)(6) is reviewed de novo. *Meagher v. Butte-Silver Bow City-County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552. A motion to dismiss under Rule 12(b)(6) has the effect of admitting all well-pleaded allegations in the complaint. *Meagher*, ¶ 13. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. *Meagher*, ¶ 13.

## DISCUSSION

¶14    *1. Did the District Court err by holding the Severance Agreement was lawful?*

¶15    Fenwick argues the Severance Agreement was unlawful because it violated a provision of the RIF Policy. The Department argues a violation of the RIF Policy does not render the Severance Agreement unlawful because the RIF Policy is not law. We agree with the Department.

¶16    An illegal contract or contract provision will not be enforced. *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 56, 341 Mont. 33, 174 P.3d 948. A contract is unlawful if it is "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Section 28-2-701, MCA.

¶17    The Montana Administrative Procedure Act defines a "rule" as "each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedures, or practice requirements of an agency. The term includes the amendment or repeal of a prior rule." Section 2-4-102(11)(a), MCA. Excluded from MAPA's definition of "rule" are

6

"statements concerning only the internal management of an agency or state government and not affecting private rights or procedures available to the public . . . ." Section 2-4-102(11)(b)(i), MCA.

¶18 Prior to 2010, an administrative rule provided "Lay-off shall not be used as an alternative to discharging an employee for cause or disciplinary purposes." ARM 2.21.5007(15) (1982). In March 2010—prior to the actions giving rise to this proceeding—the Department of Administration formally repealed ARM 2.21.5007, believing ARM 2.21.5007 was not appropriately considered a rule because it addressed "statements concerning only the internal management of an agency" and was therefore excluded from the definition of "rule" under § 2-4-102(11)(b)(i), MCA. MAR Notice No. 2-21-417; 2010 Mont. Admin. Reg. at 254. Included in the proposal to repeal ARM 2.21.5007 was a statement that such a policy was more appropriately included in the Montana Operations Manual. MAR Notice No. 2-21-417; 2010 Mont. Admin. Reg. at 254.

¶19 Fenwick argues the RIF Policy is an express law because the RIF Policy constituted an "amendment or repeal of a prior rule." Essentially, Fenwick's stance is that the Department of Administration's statement—that the RIF Policy was more appropriately included in the Montana Operations Manual—bestowed legal rule status on the RIF Policy because the statement was included in the proposal to repeal ARM 2.21.5007. This argument is unpersuasive.

¶20 The definition of "rule" encompasses "the amendment or repeal of a prior rule" so that state agencies wishing to amend or repeal a rule must satisfy rulemaking

7

requirements, such as giving public notice of the change, receiving written comments, and conducting a noticed public hearing on the proposal. Section 2-4-302, MCA. But the proposal itself carries no force of law until it has been validly adopted. Section 2-4-305(7), MCA; *see also State v. Vainio*, 2001 MT 220, ¶ 27, 306 Mont. 439, 35 P.3d 948. The RIF Policy clearly was never adopted as an amendment to ARM 2.21.5007. The Department of Administration's proposal expressly stated that ARM 2.21.5007 was being repealed, not amended, for the reason that ARM 2.21.5007 should *not* be an administrative rule. 2010 Mont. Admin. Reg. at 254. It would be curious indeed for the Department of Administration to repeal an administrative rule that it believed should not be an administrative rule, only to adopt by reference to another policy a like-for-like replacement that has the legal effect of an administrative rule. The Department of Administration's Notice of Repeal stated only that "[t]he Department of Administration has repealed . . . [ARM] 2.21.5007 . . . ." 2010 Mont. Admin. Reg. at 908. It makes no mention of the RIF Policy or an amendment to ARM 2.21.5007. Finally, perhaps most telling of all, the RIF Policy is located in the Montana Operations Manual, not the Administrative Rules of Montana. The Severance Agreement is therefore not unlawful under §§ 28-2-701(1), (2), MCA, because the RIF Policy is neither express law nor the policy of an express law.

¶21 Fenwick also argues the Severance Agreement should be held unlawful under § 28-2-701(3), MCA, because it is contrary to good morals. However, Fenwick cites no authority for this argument and fails to explain how a violation of the RIF Policy is contrary to good morals, other than citing the violation of the RIF Policy itself. We have

previously held a contract to dismiss a criminal proceeding for the private gain of a prosecutor to be contrary to good morals, *Portland Cattle Loan Co. v. Featherly*, 74 Mont. 531, 548, 241 P. 322, 328 (1925), but we see no meaningful analogy to draw here. We hold the Severance Agreement is not unlawful under § 28-2-701(3), MCA.

¶22　　*2. Did the District Court err by holding that Fenwick did not enter the Severance Agreement under duress, undue influence, menace, fraud, or mistake?*

¶23　　Citing § 28-2-1711(1), MCA, Fenwick argues the Severance Agreement should be rescinded because her consent was given by mistake or obtained through duress, menace, fraud, and undue influence by the Department. However, Fenwick raises these allegations for the first time on appeal. Accordingly, these issues are not properly preserved for our review and we decline to address them. *In re Transfer Terr. from Poplar Elem. Sch. Dist. No. 9 to Froid Elem. Sch. Dist. No. 65*, 2015 MT 278, ¶ 18, 381 Mont. 145, 364 P.3d 1222 ("Under the common law, it is well settled that issues raised for the first time on appeal will not be reviewed.").

¶24　　*3. Did the District Court err by holding the undisputed facts establish the Department's consideration did not fail?*

¶25　　Fenwick argues the consideration she was to receive pursuant to the Severance Agreement failed because the Department did not eliminate her grants manager position, did not rehire her to fill the newly-created position, did not reinstate her to her previous position, and did not give her neutral employment recommendations. The Department replies that Fenwick received all the consideration she was entitled to under the Severance Agreement. We agree with the Department.

9

¶26    In addition to the reasons set forth in § 28-2-1711(1), MCA, a contract may be

rescinded:

> (2) if, through the fault of the party as to whom the other party rescinds, the consideration for the obligation of the party at fault fails in whole or in part;
>
> (3) if the consideration becomes entirely void from any cause;
>
> (4) if the consideration, before it is rendered to the rescinding party, fails in a material respect from any cause; or
>
> (5) if all the other parties consent.

Sections 28-2-1711(2-5), MCA.[2]  A party seeking to rescind a contract for at-fault failure

of consideration must prove three things: (1) the consideration due the rescinding party

failed, in whole or in part; (2) the failure of consideration due the rescinding party was

the fault of the other party; and (3) the failure of consideration, whether in whole or in

part, was material to the contract.  *Norwood v. Serv. Distrib., Inc.*, 2000 MT 4, ¶¶ 33-35,

297 Mont. 473, 994 P.2d 25.  Where, as here, the allegation is that consideration failed in

part, materiality is a closer question.  The partial failure must touch the "fundamental

purpose of the contract" and defeat the "object of the parties in making the contract."

---

[2] The Legislature may have unintentionally altered the meaning of subsection (2), and its applicability to this case, by enactment of House Bill 37 in the 2009 Session.  The purpose of that bill was to "gender neutraliz[e]" the Montana Code Annotated.  2009 Mont. Laws 295. Prior to this amendment, subsection (2) read: "if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part . . . ."  Section 28-2-1711(2) (2009).  We construed this language to refer to the failure of consideration to be received by the rescinding party.  *See Norwood v. Serv. Distrib., Inc.*, 2000 MT 4, ¶ 33, 297 Mont. 473, 994 P.2d 25.  As subsection (2) now reads, it appears to refer to the consideration to be received by the at-fault party.  As such, it seemingly offers Fenwick no basis to rescind the contract.  However, because the basis for our holding is that neither party's consideration failed, this decision does not contemplate or otherwise address the apparently unintentional alteration caused by the gender-neutral amendment.

*Norwood*, ¶ 34 (citing *Flaig v. Gramm*, 1999 MT 181, ¶ 25, 295 Mont. 297, 983 P.2d 396).

¶27 The undisputed facts establish the consideration due Fenwick did not fail. Fenwick first argues consideration failed because the Department did not eliminate her position as required by the Severance Agreement. The contract provided "[T]he Department agrees to eliminate the Office of Homeland Security Grants manager position." It is uncontested that the Department eliminated Fenwick's position of Homeland Security Grants Manager after Fenwick was laid off. Seven months later, the Department created a new position, the Disaster and Emergency Services Grants Program Manager. The two positions, although similar, were not the same. The latter was created and funded entirely by the Legislature, while the former was not created by the Department and was funded by temporary grants. Creation of the new position by the Legislature did not constitute a failure of consideration under the Severance Agreement.

¶28 Fenwick next argues consideration failed because she was to be given preference for any job she applied for through the job registry. The Severance Agreement provided, "Ms. Fenwick is also entitled to participate on the job registry for two years from the lay-off date." It is undisputed Fenwick was allowed to participate in the job registry, through which she applied for the new grants manager position. But the Severance Agreement did not provide that Fenwick would be given preference for positions in the registry for which she applied. In fact, the Severance Agreement stated just the opposite: "[p]articipation in the job registry does not provide any preference to the job applicant."

It was therefore not a failure of consideration when the Department did not hire or give Fenwick preference for the new position.

¶29 Fenwick also argues the Department's consideration failed when she was not reinstated as the new grants manager pursuant to an RIF Policy requiring managers to offer reinstatement if the "same position or a position in the same occupation" becomes available within one year of the employee's lay-off date. However, the reinstatement provision of the RIF Policy was never included as part of the Department's consideration. The Severance Agreement provided that Fenwick waived all "provisions of the RIF Policy not specifically mentioned in this Agreement." It was therefore not a failure of consideration when Fenwick was not reinstated to the new grants manager position pursuant to the RIF Policy.

¶30 Finally, Fenwick argues the Department's consideration failed because the Department did not provide her with neutral employment recommendations. The Severance Agreement provided:

> The Department agrees to give Ms. Fenwick a neutral employment recommendation to all employers inside and outside of State government. Such a recommendation will include verification of dates of employment, salary and position held. Ms. Fenwick must direct all reference inquiries to Mr. Kent or the Department's Human Resources manager.

¶31 Fenwick argues the Department's communications with Butte-Silver Bow County after she initiated private contract services for the County constituted a negative employment recommendation. However, with regard to employment recommendations, the Severance Agreement specifically contemplated only reference inquiries. If Fenwick directed a reference inquiry to the Department, it was required to verify Fenwick's

12

employment dates, salary, and position held. The parties do not dispute the fact that the Department never received a reference inquiry. Therefore, any negative comments made by the Department to Butte-Silver Bow County cannot be construed as an employment recommendation. It should be noted that, although the Department's comments did not constitute a failure of consideration, the District Court held that the comments were actionable by way of Fenwick's Intentional Interference with a Business Relationship claim.

¶32 Because the undisputed facts establish the Department's consideration did not fail, the District Court correctly ruled that the contract could not be rescinded as a matter of law.

¶33 *4. Did the District Court err by dismissing Fenwick's constitutional claims?*

¶34 Fenwick alleged the Department's actions violated her rights under Article II, Sections 3, 4, and 17 of the Montana Constitution by depriving her of the right to acquire and possess property and conspiring to deprive her of due process and equal protection. Fenwick also alleged the Department's conduct constituted an unconstitutional custom and policy for which monetary relief should be available under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

¶35 Our precedent mandates "no civil case shall be reversed by reason of error which would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless." *Newbauer v. Hinebauch*, 1998 MT 115, ¶ 20, 288 Mont. 482, 958 P.2d 705; *see also In re Mental Health of O.R.B.*, 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482 (a procedural error that results in no "substantial prejudice" is

13

deemed harmless or *de minimus*). We do not determine whether the District Court erroneously dismissed Fenwick's constitutional claims because, even if it did, such an error was harmless given our holding that the Severance Agreement may not be rescinded, and consequently, such claims were waived under the Severance Agreement.

¶36  *5. As argued by the Department, did the District Court err by denying summary judgment to the Department on Fenwick's claims for Intentional Interference with a Business Relationship and Breach of the Covenant of Good Faith and Fair Dealing?*

¶37  The Department argues the District Court erred when it held genuine issues of material fact precluded summary judgment on Fenwick's claims for Intentional Interference with a Business Relationship and Breach of the Covenant of Good Faith and Fair Dealing. The Department did not file a cross-appeal on these issues, and therefore they are not properly before us for review. *Billings Firefighters Local 521, Int'l Ass'n of Firefighters v. City of Billings*, 1999 MT 6, ¶ 31, 293 Mont. 41, 973 P.2d 222.

¶38  We affirm the District Court on the issues before us and remand with instructions to proceed on Fenwick's remaining claims.


/S/ JIM RICE

We concur:


/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA

14